IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES GEORGE :
:
         Plaintiff : CIVIL ACTION
:
    vs. :
: NO. 08-CV-3893
WILBUR CHOCOLATE CO., INC. :
:
         Defendant :

**MEMORANDUM OPINION AND ORDER**

GOLDEN, J.                                                                                 APRIL 28, 2010

Before the Court is Defendant Wilbur Chocolate Co., Inc.'s ("Wilbur") Motion for Summary Judgment (Doc. No. 23). Defendant is seeking judgment as to the age discrimination claim brought against it in Plaintiff Charles George's ("George") single-count Complaint. For the following reasons, Wilbur's motion is granted.

**I.    BACKGROUND**

This civil action arises out of employment decisions made by Wilbur in regard to George's employment with Wilbur and his eventual termination. The facts giving rise to this action took place over approximately four months. The facts of this case, viewed in the light most favorable to the non-moving Plaintiff,[1] are as follows.

Plaintiff, a fifty-nine year old man (Wilbur SMF[2] ¶ 1; George SMF[3] ¶¶ 1, 67), applied for

---

[1] See infra Section II.

[2] "Wilbur SMF" refers to "Defendant's Statement of Undisputed Material Facts." (Doc. No. 25.)

[3] "George SMF" refers to "Plaintiff's Response to Defendant's Statement of Undisputed Facts and Counterstatement of Undisputed Material Facts." (Doc. No. 30.)

and was hired as a chocolate operator on September 4, 2007. (George SMF ¶¶ 21, 68-69.) When Plaintiff's employment commenced on October 1, 2007, he was assigned to a packing position.[4] (Wilbur SMF ¶¶ 2, 26; George SMF ¶¶ 2, 26.) Unhappy as a packer, Plaintiff immediately inquired about permanent assignment to a chocolate operator position,[5] but Wilbur informed George that it was still looking for a position to which to assign him. (Wilbur SMF ¶ 25; George SMF ¶¶ 24-25.) Initially, George worked as a packer for approximately three to four weeks. (Wilbur SMF ¶ 28; George SMF ¶ 28.)

On November 1, 2007, Defendant began training Plaintiff for a dry ingredient handler position.[6] (Wilbur SMF ¶ 30; George SMF ¶ 30, 74.) Although an open handler position was advertised, Plaintiff did not bid on the position because Defendant indicated that it might permanently staff Plaintiff in that position without an application.[7] (Wilbur SMF ¶¶ 31-32; George SMF ¶¶ 31-32.) Plaintiff soon discovered he could not meet the demands of the dry ingredient handler position as a result of his fear of heights; dry ingredient handlers must be comfortable

---

[4]"As a packer, Plaintiff had to watch chocolate bits or chocolate chips come down the conveyor belt into a machine which placed the bits/chips into a box located on a scale. Once the scale reached a certain weight, Plaintiff removed it from the scale, placed another box on the scale, closed the box he removed, taped the box, and put it on a different conveyor which took it to a pallet where Plaintiff would stack them." (Wilbur SMF ¶ 27; George SMF ¶ 27.)

[5]No definitive description of the Chocolate Operator position was made available. However, Plaintiff was notified that it was a "menagerie" of many different positions. (Wilbur SMF ¶¶ 22-23, 25; George SMF ¶¶ 22-25.) The record intimates that probationary employees fulfilled this general purpose role until they obtained a permanent position.

[6]Dry ingredient handlers opened forty to fifty pound bags of dry ingredients approximately thirty to forty times per hour, poured the ingredients into vats and hoppers, and poured liquid chocolate into the top of a tanker truck. (Wilbur SMF ¶¶ 33-36; George SMF ¶¶ 33-36.)

[7]Typically, Wilbur employees engaged in an open bidding process for available positions in which seniority and qualifications were paramount considerations. (Wilbur SMF ¶¶ 15, 18-20; George SMF ¶¶ 15, 18-20.)

working at the top of vats and tanker trucks. (Wilbur SMF ¶¶ 37-40; George SMF ¶¶ 37-40.) Defendant reassigned Plaintiff back to the packing department, where he worked for another month. (Wilbur SMF ¶¶ 41-42; George SMF ¶¶ 41-42.)

Following Plaintiff's second stint as a packer, Defendant began training Plaintiff as a lab assistant on December 3, 2007. (Wilbur SMF ¶¶ 43-44; George SMF ¶¶ 43-44, 75.) Plaintiff was subsequently informed that the position was temporary because Kris Mills, a permanent employee, properly bid on and was awarded the open permanent lab assistant position. (Wilbur SMF ¶ 45; George SMF ¶ 45.) Although Mills held the official lab assistant title as of December 2007, she did not start working in the lab until January 2009. (George SMF ¶ 88). In the meantime, Matt Haar, Plaintiff's lab supervisor, noted that Plaintiff was progressing satisfactorily in the lab and could continue to fill the position in Mill's absence. (Wilbur SMF ¶ 46; George SMF ¶¶ 46, 76, 89-91.) However, when discussing Plaintiff with management, Haar reiterated that Plaintiff's assignment to the lab was temporary, and that Defendant needed to make a decision regarding Plaintiff's employment status before his probationary period expired, taking into account Plaintiff's lack of positional flexibility. (Wilbur SMF ¶ 46.)

On January 17, 2008, Haar notified Plaintiff that he was terminated effective immediately. (Wilbur SMF ¶ 53; George SMF ¶¶ 53, 87.) According to Defendant, Plaintiff was terminated because management did not believe he would succeed in positions at the plant other than the temporary lab assistant position. (Wilbur SMF ¶¶ 55-56; George SMF ¶¶ 55-56.) Prior to his termination, Plaintiff admitted that he was unable to perform "some" positions available to him at

the plant because of his fear of heights[8] and his preference to avoid "heat situations." (Wilbur SMF ¶¶ 47-49; George SMF ¶¶ 47-49.) Plaintiff inquired about other possible positions, but Defendant did not respond to Plaintiff's query. (George SMF ¶ 56.) That evening, Plaintiff contacted the President of his Union to inquire about his termination. (Wilbur SMF ¶ 58; George SMF ¶ 58.) The Union President told him "that the supervisors were not happy with Plaintiff, and because Plaintiff was a probationary employee,[9] there was nothing the Union could do for him." (Wilbur SMF ¶ 59; George SMF ¶ 59.) However, Haar had informed management eight days before Plaintiff's termination that Plaintiff was a successful lab assistant, that he "could do the lab job," and that there was "no reason to let him go." (George SMF ¶¶ 90-91.)

Plaintiff testified that two probationary co-workers, thirty-six year old Jason Alwine, a process operator, and thirty-three year old Grady Reicker, a tanker tester, received permanent assignments within two weeks of their start dates. (Wilbur SMF ¶¶ 64-65; George SMF ¶¶ 64-65, 78-79.) Thus, Plaintiff claimed that he was terminated as a result of his age. Plaintiff further averred that Defendant terminated him from a job that was earmarked for a younger woman. (George SMF ¶ 59.) Also, Plaintiff claimed he never received a performance review. Nonetheless, there is no indication that any Wilbur employees received more feedback than Plaintiff during their

---

[8]Approximately twenty to thirty of the fifty positions available at Defendant's facilities required working at heights to some extent. (Aric Glass Dep. at 52:21-53:12.) Three of these positions required working on top of a tanker truck. (Aric Glass Dep. at 52:1-11.)

[9]At Wilbur, new hires are subject to a 120-day probationary period, (Wilbur SMF ¶¶ 3, 6-7; George SMF ¶¶ 3, 6-7), which was outlined in the collective bargaining agreement ("CBA") that Plaintiff reviewed when he was hired. (Wilbur SMF ¶¶ 4-5; George SMF ¶¶ 4-5.) Probationary employees are not eligible to take advantage of the protections and procedures afforded permanent employees under the CBA. (CBA ¶ 18.1.) During the probationary period, employees are routinely provided with oral evaluations and are expected to satisfactorily perform many jobs at the plant. (Wilbur SMF ¶¶ 9-12; George SMF ¶¶ 9-12.)

probationary periods. (Wilbur SMF ¶¶ 61, 63; George SMF ¶¶ 61, 63.)

After his termination, Plaintiff cross-filed an age discrimination claim with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.[10] (Compl.[11] ¶ 11.) Plaintiff filed this action for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") of 1967, Pub. L. No. 90-202, as amended, 29 U.S.C. § 612, et seq., on August 15, 2008.

## II. STANDARD

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories, demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. It is not the role of the trial judge "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial," id. at 250, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255. At "the summary judgment stage, in other words, 'all that is required [for a non-moving party to survive the motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve [at

---

[10] Nothing in the record indicates whether a Right to Sue Notice was issued.

[11] "Compl." refers to Plaintiff's Complaint. (Doc. No. 1.)

trial] the parties' differing versions of the truth.'" Jackson v. Univ. of Pittsburgh, 846 F.2d 230, 233 (3d Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).

## III. ANALYSIS

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "When . . . a plaintiff alleges that he suffered age discrimination predicated on disparate treatment, liability under the ADEA depends on whether age 'actually motivated the employer's decision.'" Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). Where a plaintiff has not provided direct evidence of age discrimination, as is the case here, the plaintiff must advance circumstantial evidence of discrimination that satisfies the three-step burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973)." Fakete v. Aetna, Inc., 308 F.3d 355, 357 (3d Cir. 2002). Under McDonnell Douglas, Plaintiff must first establish a prima facie case of discrimination. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (citations omitted). If the Plaintiff is successful, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment decision. Id. (citations omitted). If the employer proffers this reason, Plaintiff must provide evidence sufficient to permit a reasonable jury to find the employer's articulated reason false or pretextual. Id. (citations omitted).

### A. Prima Facie Case

In order to establish a prima facie case of age discrimination, the Plaintiff must show that he: (1) is a member of a protected class, i.e. that he is over forty years of age; (2) was qualified for the

position in question; (3) suffered an adverse employment decision; and (4) that similarly-situated individuals outside the protected category were treated more favorably. Gary v. City of Phila., Dep't of Human Servs., No. 04-CV-1493, 2006 WL 3484356, at *2 (E.D. Pa. Nov. 21, 2006) (citations omitted); see McDonnell-Douglas, 411 U.S. at 802. Defendant challenges George's case on the second and fourth prongs. The Court will address these claims in turn.

1.  Qualified for the Position

Wilbur contends that George was not qualified for permanent employment because he was unable to perform many jobs as required by Wilbur. In response, George notes that Wilbur admits that he was qualified for the lab assistant position he occupied at the time of his termination. George's contention, although undisputed, is not dispositive because Wilbur's employment action was allegedly based upon George's aptitude to succeed as a permanent employee, not just as a lab assistant.

Although George disqualified himself from certain jobs, the Court cannot conclude that he was unable to perform "many jobs." The record shows that Plaintiff could perform as a packer and a lab assistant.[12] Despite the Court's finding that there is an issue of material facts regarding Plaintiff's qualifications, Plaintiff's failure to identify similarly-situated comparators, discussed infra, renders this issue moot.

---

[12] The Court is mindful that George refused to work as a packer. However, the question the Court entertains here is not whether George was willing to work in multiple positions, but whether he could do so. See Makky v. Chertoff, 541 F.3d 205, 215 (3d Cir. 2008) (noting that the job qualification issue "involves inquiry only into the bare minimum requirement necessary to perform the job at issue.") Considering that the only evidence before the Court regarding George's time as a packer indicates that he worked in the position for almost two months, the Court cannot conclude that he is unable to perform that position.

2.   Similarly-Situated Individuals

Plaintiff claims he was similarly-situated to Alwine and Reicker because they held the same probationary status before Defendant elevated them into permanent positions two weeks after their employment began.[13] However, Defendant argues that neither Alwine nor Reicker are proper comparators because they worked in different positions then Plaintiff.

Determining whether an individual is "similarly situated" to another individual is a case-by-case fact-intensive inquiry. Monaco, 359 F.3d at 305. The Court must consider "the job function, level of supervisor responsibility and salary, as well as other factors relevant to the particular workplace." Id.; see also Johnson v. Kroger Co., 319 F.3d 858, 867 (6th Cir. 2003) ("In the context of personnel actions, the relevant factors for determining whether employees are similarly situated often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct.") (citation omitted); Milliron v. Pilot Travel Centers, LLC, No. 06-CV-0262, 2009 WL 2579200, at * 10 (W.D. Pa. Aug. 20, 2009) (citing Monaco and collecting other Circuit cases). "To be deemed similarly situated with individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."

---

[13]Plaintiff seems to compare himself to Mills, see (George SMF ¶ 59), the twenty-six year old permanent employee who was awarded the permanent lab assistant position. Plaintiff's failure to address this issue in his complaint or brief is fatal to his argument. In the interests of clarity, however, the Court notes that Mills' permanent employment status at the time of Plaintiff's hiring refutes any argument that Plaintiff and Mills were similarly situated. George v. Leavitt, 407 F.3d 405, 415 (D.C. Cir. 2005) (noting that "probationary employees and permanent employees are not similarly situated") (citations omitted). Additionally, the year separating Plaintiff's termination and the start of Mill's tenure in the lab renders the events too attenuated to reasonably support the argument that Mills replaced George. See Gutknecht v. SmithKline Beecham Clinical Labs., Inc., 950 F. Supp. 667, 673 (E.D. Pa. 1996); Dibiase v. SmithKline Beecham Clinical Labs., Inc., 847 F. Supp. 341, 345-46 (E.D. Pa. 1994) (citations omitted), reversed on other grounds, 48 F.3d 719 (3d Cir. 1995).

Bullock v. Children's Hosp. of Phila., 71 F. Supp. 2d 482, 489 (E.D. Pa. 1999) (citations and internal quotation marks omitted); see also Opsatnik v. Norfolk Southern Corp., 335 Fed. Appx. 220, 223 (3d Cir. 2007) ("While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'") (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)); see Lepore v. Lanvision Sys., Inc., 113 Fed. Appx. 449, 452 (3d Cir. 2004) (opining that similarly situated employees "work in the same area in approximately the same position") (citing Anderson v. Conrail, 297 F.3d 242, 249-50 (3d Cir. 2002)); Armstead v. Norfolk Southern Corp., No. 04-CV-1675, 2006 WL 544403, at *5 (W.D. Pa. Mar. 3, 2006) (holding that a supervisor was not similarly situated to another supervisor with the same title where the former could not perform the latter's duties).

All new hires at Wilbur began as chocolate operators with a fifteen-dollar per hour salary. Defendant acknowledges that new hires are initially unable to fill specialized roles. However, the parties acknowledge that the chocolate operator position is comprised of a infinite "menagerie" of duties, so that different operators become responsible for different jobs. As a result, Alwine, Reicker, and George were not similarly situated probationary employees. Alwine and Reicker worked on top of the tanker truck, at a height at which George refused to work, never declined to work in or expressed displeasure with any position, and ascended into permanent jobs through the bidding process, which Plaintiff did not use. Because Alwine and Reicker were not similarly situated to him, Plaintiff cannot show the unlawful differential treatment necessary to establish a prima facie case and Defendant is entitled to summary judgment.

**B.**     **Legitimate, Nondiscriminatory Reason for Adverse Employment Decision**

Even assuming, arguendo, that Plaintiff demonstrated a prima facie case, a review of the

remaining steps of the McDonnell Douglas framework reveals that Defendant would still prevail.

The employer's burden in proffering a legitimate, nondiscriminatory reason for termination is "'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision.'" Gaetano v. Bayer, Inc., No., 2007 WL 3334985, at *7 (W.D. Pa. Nov. 8, 2007) (quoting Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006)) (alteration in original). Fulfilling this burden, Defendant cites to Plaintiff's poor overall job performance and his unwillingness to fulfill multiple roles as the motivating factor for his termination.

**C.**     **Pretext**

Where the Defendant proffers a legitimate, nondiscriminatory reason for termination, the Plaintiff may survive summary judgment only if he points to evidence from which the factfinder "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that . . . invidious discriminat[ion][] was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). "[A]n employer would be entitled to judgement as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

Here, in an attempt to show that Wilbur's reliance upon his lack of flexibility was pretextual, Plaintiff highlights Haar's statement that Plaintiff was adequately performing his lab-related duties and that there was no reason to end his employment. Additionally, Plaintiff claims he should have

remained in the temporary lab position until Mills officially started working as a permanent lab assistant and that he could have worked in any number of other positions at Wilbur if they had become available. The Court disagrees that this is evidence of pretext.

The question "is not whether the employer made the best, or even a sound, business decision; it is whether the real reason [for the termination] is [discrimination]." Dooley v. Roche Lab, Inc,. 275 Fed. Appx. 162, 165 (3d Cir. 2008) (quoting Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997)) (second alteration in original); Ogorzalek v. Hazelton Radiology Associates, No. 04-CV-1038, 2006 WL 2346425, at *10 (M.D. Pa. Aug. 11, 2006) (noting that the Court is not concerned with whether the employer is wise, shrewd, prudent, or competent, but whether it made an employment decision to forward some discriminatory motive). Here, the record indicates that Wilbur lawfully used the probationary period in the manner for which it was designed, to ascertain whether it wished to transition an employee into permanent employment.

Plaintiff does not dispute that Defendant wanted new employees to demonstrate the ability to master several different jobs, or that Plaintiff disqualified himself for several positions, either because he did not like the job or because he feared heights. Moreover, although Haar praised Plaintiff's lab performance, he also noted that Defendant would consider Plaintiff's self-imposed limitations in reaching an appropriate employment decision. Taking into account Plaintiff's four-month work history, one positive review does not undermine Defendant's articulated reasons for termination or suggest age discrimination. See Palma v. Volunteers of America, No. 04-CV-919, 2006 WL 328352, at * 5-6 (E.D. Pa. Feb. 9, 2006) (holding that an employer lawfully terminated probationary employee for not being a "good fit" where employee had difficulty working and communicating with others). Defendant had legitimate reasons to find that, despite a recent

improvement in Plaintiff's work, Plaintiff's attitude and lack of versatility would make him a poor permanent employee. Even if the Court agrees that Wilbur could have maintained the status quo until January 2009 or permitted George to find another position for which he was suited,[14] Wilbur was under no obligation, absent discrimination, to continue to employ Plaintiff.

But-for Defendant's age, the record is bereft of evidence of age discrimination. Plaintiff has failed to provide countervailing evidence from which a reasonable finder of fact could determine that Defendant's stated reason for his termination did not actually motivate the decision or was falsified, Ogorzalek, 2006 WL 2346425, at *10 ("[P]laintiff must show that the defendant's decision was so plainly wrong that it could not have been the defendant's real reason for discharging the plaintiff."). Accordingly, Defendant is entitled to summary judgment.

An appropriate Order follows.

---

[14]Plaintiff stresses that at the time of his hiring Defendant was attempting to fill at least five to eight positions and that his fear of heights only definitively eliminated him from working in three of the approximately fifty positions at Defendant's facilities. However, Plaintiff ignores his distaste for the packer position or any job in which he would be exposed to heat. He also fails to identify what, if any, positions were available when he was terminated. Furthermore, even if additional positions were available, Plaintiff did not establish that he was qualified for and willing to accept any specific position.